UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------

| | |
|---|---|
| REBECCA WEINREB and<br>DAVID M. WEINREB,<br><br>Plaintiffs,<br><br>v.<br><br>XEROX BUSINESS SERVICES,<br>LLC HEALTH AND  WELFARE PLAN,<br>CONDUENT HR CONSULTING, LLC,<br>AND CAREMARK PCS HEALTH LLC,<br><br>Defendants. | Case No. 1:16-cv-06823-DAB |

------------------------------------------------------

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT

The Court clearly erred in dismissing Plaintiffs' fourth claim for relief under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, because it overlooked that Section 1557 authorizes a private right of action for disparate impact sex discrimination claims, which was confirmed by the agency charged with interpreting the relevant provisions, the Department of Health and Human Services.  Applying the correct legal standard, the Second Amended Complaint plausibly alleges that Defendants' failure to provide coverage for fentanyl to treat Plaintiff Rebecca Weinreb's Global Diffuse Adenomyosis (GAD), a medical condition that only women suffer, constitutes sex discrimination prohibited by the ACA.

## ARGUMENT

"The standards governing a motion for reconsideration under Local Rule 6.3 are the same as those under Federal Rule of Civil Procedure 59(e)." *Abrahamson v. Bd. of Educ.*, 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002). Under both Rules, this Court "may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Schwartz v. Liberty Mut. Ins. Co.*, 539

F.3d 135, 153 (2d Cir. 2008) (internal quotation marks omitted). In particular, a motion for reconsideration will be granted where the movant "point[s] to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Tranp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

I.     **THE COURT CLEARLY ERRED BY REFUSING TO PERMIT PLAINTIFFS TO PROCEED WITH A DISPARATE IMPACT THEORY UNDER SECTION 1557 OF THE AFFORDABLE CARE ACT.**

Section 1557 unambiguously allows for a private cause of action alleging disparate impact discrimination regardless of the grounds alleged, and a contrary interpretation would defy legislative intent and yield absurd results. However, even if the Court were to find the statute ambiguous, it must defer to the Department of Health and Human Services' decision to permit disparate impact Section 1557 sex discrimination claims pursuant to *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865–66 (1984).

A.     **Section 1557 Unambiguously Permits Disparate Impact Sex Discrimination Claims.**

The Court's conclusion that Section 1557 does not permit a private right of action for disparate impact sex discrimination was clearly erroneous. The Court must evaluate Section 1557 using the familiar *Chevron* test. Under Step 1 of this test, "if the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. To determine whether Congress has spoken on a matter, a reviewing court must "examine the statutory text, structure, and purpose as reflected in its legislative history," and "[i]f the statutory text is ambiguous, [the Court must] also examine canons of statutory construction." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 512 (2d Cir. 2017). "A particular statute's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision

within the context of that statute." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (internal quotation marks omitted).

Section 1557 permits a plaintiff bringing a private cause of action to utilize the "enforcement mechanisms provided for and available under such title," including the enforcement mechanisms available under "section 504 [of the Rehabilitation Act of 1973]." 42 U.S.C. § 18116(a) (2010).[1] Section 504 of the Rehabilitation Act permits a private right of action for disparate impact claims. *See Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016). Accordingly, any Section 1557 plaintiff, regardless of their protected class status, may bring a claim for disparate impact discrimination under Section 1557. *See Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *11. (D. Minn. Mar. 16, 2015) (holding that Section 1557 must be interpreted to "create a new, health-specific, anti-discrimination cause of action that is subject to a singular standard, regardless of a plaintiff's protected class status").

In interpreting statutory text, the Court must apply principles of statutory construction to any language it finds unclear. *Catskill Mountains*, 846 F.3d at 512. One such principle is that a

---

[1] Section 1557 states, in pertinent part:

[A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a) (2010).

statute must be interpreted so as to avoid "patently absurd" results. *United States v. Brown*, 333 U.S. 18, 27 (1948). The "singular standard" interpretation of Section 1557's text is necessary to avoid absurd and illogical results, as any other interpretation of the statute would mean that "different enforcement mechanisms and standards would apply to a Section 1557 plaintiff depending on whether the plaintiff's claim is based on her race, sex, age, or disability." *Rumble*, 2015 WL 1197415, at *11-12. Further, this is the only interpretation of the statute that would permit courts to evaluate the claims of a plaintiff experiencing multiple and intersecting forms of discrimination. *Id.* at *12.

Two other separate canons of statutory construction work in tandem to provide for the broadest possible construction of Section 1557's protections. First, civil rights laws like Section 1557 enjoy liberal construction so that the beneficiaries protected by those laws realize the fullest benefit possible. *See Phillip v. Univ. of Rochester*, 316 F.3d 291, 296 (2d Cir. 2003) (reviewing federal civil rights statutory language as "broadly as is consistent with the actual language of each clause"); *Lincoln Cercpac v. Health and Hospitals Corp.*, 920 F. Supp. 488, 497 (S.D.N.Y. 1996) (explaining that a civil rights statute "must be broadly construed to effectuate" its purpose). Second, Section 1557 is a civil rights law embedded in a broader remedial statute – the Affordable Care Act. A related canon provides that courts should give language in remedial statutes "a generous construction consistent with its reformative mission" so long as the results are not unreasonable. SUTHERLAND'S ON STATUTORY CONSTRUCTION, § 60:1 (7th ed. 2018). According the liberal construction required by these canons, and viewing Section 1557 in context of the larger ACA statutory scheme as this Court must do, *Catskill Mountains*, 846 F.3d at 512; *Louis Vuitton*, 676 F.3d at 108, it is clear that the Court erred in interpreting Section 1557 narrowly to exclude disparate impact sex discrimination claims.

Moreover, extensive legislative history makes clear that in passing the ACA, Congress intended to eliminate sex discrimination in health care and health insurance. *See, e.g.* 156 Cong. Rec. H1582 (daily ed. Mar. 17, 2010) (statement of Rep. John Garemendi) ("The day the President signs this bill [*i.e.*, the ACA], [insurance companies'] discriminatory practices are over. [Insurance companies] will not be able to discriminate against Americans because of their health status, their marital status, whether they are male or female."); 156 Cong. Rec. H1582 (daily ed. Mar. 17, 2010) (statement of Rep. Schakowsky) ("This bill ends gender discrimination."); 155 Cong. Rec. S10,262-01 (daily ed. Oct. 8, 2009) (statement of Sen. Boxer) ("Women have even more at stake. Why? Because they are discriminated against by insurance companies, and that must stop, and it will stop when we pass insurance reform.").

As the cornerstone of Congress' particular focus on addressing sex discrimination throughout the ACA, Section 1557 was specifically intended to provide robust protection against discrimination on the basis of sex. As Senator Patrick Leahy stated about Section 1557 on the day the ACA passed:

> I am also proud that the bill explicitly prohibits discrimination on the basis of race, color, national origin, sex, disability or age in any health program or activity receiving Federal funds. These protections were necessary to remedy the shameful history of invidious discrimination and the stark disparities in outcomes in our health care system based on traditionally protected factors such as race and gender. The nondiscrimination provision makes clear that the enforcement mechanisms from other statutes prohibiting discrimination in federally funded programs, such as title VI of the Civil Rights Act of 1964 and title IX of the Education Amendments of 1972, apply with equal force to federally funded health programs and activities. . . [T]hese protections . . . ensure that all Americans are able to reap the benefits of health insurance reform *equally without discrimination*. 156 Cong. Rec. S1842 (daily ed. Mar. 23, 2010) (emphasis added).

To hold that people have different levels of protection based upon the protected class to which they belong would effectively embed discriminatory practices into Section 1557 and contravene

the express purpose of ensuring equal treatment within the healthcare system. This Court's interpretation of Section 1557 is thus contrary to the overall goal of Section 1557 and the ACA.

In sum, the statutory language and legislative history demonstrate that Congress intended Section 1557 and the ACA to reduce sex discrimination in health insurance by ensuring that it covers women's health needs and that women no longer pay more for health care than men. This purpose would be wholly frustrated by requiring all victims of sex discrimination to prove intentionality. Section 1557 unambiguously permits disparate impact sex discrimination claims.

B.     **The Department of Health and Human Services' Determination that Section 1557 Permits Disparate Impact Sex Discrimination Claims Is Entitled to *Chevron* Deference.**

Even if the Court were to find Section 1557 ambiguous, it still erred in rejecting Plaintiffs' Section 1557 claim because it overlooked that the agency charged with administrating Section 1557, the U.S. Department of Health and Human Services ("HHS"), has determined that the statute permits a private right of action for disparate impact sex discrimination.

If a reviewing court determines that Congress has not spoken on a particular issue, Step 2 of the *Chevron* analysis applies. Under Step 2, the court may not "simply impose its own construction on the statute" if Congress has delegated interpretive authority to an agency and the agency has interpreted the statute pursuant to that authority. *Chevron*, 467 U.S. 837 at 843. Rather, the only "question for the court is whether the agency's answer is based on a permissible construction of the statute;" if so, the court is obliged to accept the agency's position. *Chevron*, 467 U.S. 837 at 843; *Catskill Mountains*, 846 F.3d at 520 ("At *Chevron*'s second step the court must defer to the agency's interpretation if it is reasonable." (internal quotation marks and alterations omitted)). Where an agency interpretation is issued pursuant to notice-and-comment rulemaking or other "relatively formal administrative procedure tending to foster [ ] fairness and deliberation," *Chevron* deference is presumed. *United States v. Mead Corp.*, 533 U.S. 218, 230

(2001).  Agency interpretations in the preamble to a final rule promulgated through notice-and-comment rulemaking are entitled to deference, "whether *Chevron* or otherwise." *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132, 138 (2d Cir. 2002) (deferring to HHS CMS interpretation of Medicaid statute in preamble to rule); *Cosgrove v. Sullivan*, 999 F.2d 630, 633 (2d Cir. 1993) (granting *Chevron* deference to HHS interpretation of Medicare statute in preamble to rule).

HHS' final rule implementing Section 1557 and its preamble make clear that the statute permits disparate impact claims for *all* classes protected under the statute. Congress explicitly delegated authority to promulgate regulations to implement Section 1557 to the Secretary of HHS. 42 U.S.C. § 18116 (2010) ("The Secretary may promulgate regulations to implement this section."). Pursuant to that express delegation, HHS' Office for Civil Rights promulgated the final rule implementing Section 1557 via notice-and-comment rulemaking effective July 18, 2016. 45 C.F.R. Part 92 (2016).

The final rule expressly prohibits disparate impact sex discrimination: "A covered entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that *have the effect* of subjecting individuals to discrimination on the basis of sex." 45 C.F.R. § 92.101(b)(3)(ii) (emphasis added).

The preamble to the final rule makes clear that Section 1557 permits a private right of action for disparate impact sex discrimination. Comments submitted to HHS during the rulemaking process asked for clarification that "all enforcement mechanisms available under the statutes listed in Section 1557 are available to each Section 1557 plaintiff, regardless of the plaintiff's protected class." *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,375-01, 31,439.  HHS responded in the affirmative:

> [HHS' Office for Civil Rights] interprets Section 1557 as authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation. *Id.* at 31,440.

This interpretation is binding here. It is a reasonable interpretation of the statute that this Court must follow. *Catskill Mountains*, 846 F.3d at 524 ("[T]he question is not whether the [agency's] reasoning was flawless, impervious to counterarguments, or complete—the [agency] only must have provided a reasoned explanation for its action."). And although the "agency's view need not be the only possible interpretation, nor even the interpretation deemed most reasonable by the courts," *id.* at 520, for all the reasons set forth in Part I.A., *supra*, HHS' conclusion that Section 1557 permits disparate impact claims regardless of the plaintiffs' protected class is the only permissible interpretation given the statute's broad remedial purpose of eliminating discrimination in health insurance, and given the absurdity of construing individuals' right to be free from discrimination to vary depending on their particular protected class.

Moreover, HHS' Office for Civil Rights issued this interpretation drawing on its considerable expertise administering civil rights statutes, in direct response to comments submitted during the notice-and-comment process. Accordingly, this interpretation has among the strongest indicia of deliberateness and authority possible for an agency interpretation, thus warranting controlling deference. *Mead Corp.*, 533 U.S. at 230–31; *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d at 138 (degree of deference court applies depends on "the agency's expertise, the care it took in reaching its conclusions, the formality with which it promulgates its interpretations, the consistency of its views over time, and the ultimate persuasiveness of its arguments"). Indeed, at least one other court in this District has relied on this precise preamble language in denying a motion for summary judgment against a claim of sex discrimination in health coverage under Section 1557. *See Cruz v. Zucker*, 195 F. Supp. 3d 554, 559 (S.D.N.Y. 2016), *reconsideration granted on other grounds by* 218 F. Supp. 3d 246 (S.D.N.Y. 2016).

In holding that Section 1557 does not permit disparate impact sex discrimination claims, the Court relied on HHS' final rule, 45 C.F.R. § 92.301 (2016), yet interpreted it in a manner contrary to HHS' own interpretation of that rule. (Mem. Op., Docket No. 89 at 44).  This was error. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation" (internal quotation marks omitted)).  And the only case the Court cites, *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688 (E.D. Pa. 2015), predates the final rule, so the Court's reliance on it was misplaced.

The court clearly erred by holding that Section 1557 does not permit a private right of action for disparate impact sex discrimination in direct contravention of the unambiguous meaning of Section 1557 and HHS' controlling statutory interpretation.

II.     **THE SECOND AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANTS DISCRIMINATED AGAINST MRS. WEINREB ON THE BASIS OF SEX UNDER A DISPARATE IMPACT THEORY.**

At the motion to dismiss stage, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face" to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Austin v. Town of Farmington*, 826 F.3d 622, 626–27 (2d Cir. 2016). The Court must "assume all well-pleaded factual allegations to be true," and view such allegations in the "light most favorable to the plaintiffs," a rule that "applies with special force to claims of civil rights violations." *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 88 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

To establish a disparate impact claim, Plaintiffs' allegations must make it plausible that Plaintiffs, *after discovery*, will be able to show that Caremark's refusal to cover fentanyl for Global Diffuse Adenomyosis has the effect of discriminating against women.  Plaintiffs need not plead a statistical disparity, particularly at the pleading stage, and indeed, none of the cases this

Court cited to support the contrary were decided on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Jenkins v. New York City Transit Authority*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) (citing *Swierkiewicz v. Sorema*, 534 U.S. at 511–12) ("[T]o the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect."); *see also L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013). Rather, at this stage of the litigation, Plaintiffs need only "identify in [their] pleadings a specific . . . practice that is the cause of the disparate impact" to "'give the defendant fair notice of what [their] claim is and the grounds upon which it rests.'" *Jenkins*, 646 F. Supp. 2d at 469–70 (quoting *Swierkiewicz*, 534 U.S. at 512).

The allegations in the Second Amended Complaint are sufficient to state a claim for disparate impact sex discrimination under Section 1557. Section 1557 prohibits health plans from implementing a benefit design that discriminates on the basis of sex in the provision of health coverage. 45 C.F.R. § 92.207(b)(2) (2016). Discrimination "on the basis of sex" includes, *inter alia*, "discrimination on the basis of pregnancy, . . . childbirth or related medical conditions . . . ." 45 C.F.R § 92.4 (2016). Third party administrators may be liable under Section 1557 for discriminatory plan design and administration. *See Tovar v. Essentia Health*, No. CV 16-100 (DWF/LIB), 2018 WL 4516949, at *4 (D. Minn. Sept. 20, 2018) ("Contrary to HealthPartners' argument, ERISA specifically carves out room for TPAs to comply with other federal laws: 'Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States.' The Court will not construe ERISA to impair Section 1557. Nothing in Section 1557, explicitly or implicitly, suggests that TPAs are exempt from the statute's nondiscrimination requirements. Accordingly, the Court concludes that HealthPartners may be held liable under Section 1557." (quoting 29 U.S.C. § 1144(d)). In

*Tovar*, the court denied the defendant third party administrator's motion to dismiss the plaintiffs' sex discrimination claim under Section 1557, holding that a health care plan that excluded coverage of necessary health services related to gender transition constituted actionable sex discrimination under Section 1557.

As in *Tovar*, the Second Amended Complaint more than plausibly alleges that the plan of benefits and Caremark's administration thereof discriminates on the basis of sex because it has the effect of denying the only effective treatment for a medical condition directly related to pregnancy and childbirth, and as a result "provides inferior coverage to women than to men." (Second Amended Complaint ("Compl."), Docket No. 67, ¶ 104). *Tovar*, 2018 WL 4516949, at *4. Specifically, Plaintiffs allege that Rebecca Weinreb "is a beneficiary in the Plan" and suffers from "an orphan illness . . . called Global Diffuse Adenomyosis," a "disease suffered by women only, but not men." (Compl. ¶¶ 4, 10). Mrs. Weinreb contracted this disease after undergoing a "Caesarian Section to deliver her fourth child," and believes "the GDA was caused by this pregnancy." (Compl. ¶ 11). Mrs. Weinreb's doctors agree that fentanyl is "the only possible effective treatment for her pain as a result of her illness." (Compl. ¶ 49). Caremark has been the "administrator of the drug portion of the Plan" since January 1, 2014 with discretion to "mak[e] the determinations as to what prescription medications are available to participants and beneficiaries under the terms of the Plan," is a "fiduciary of the drug portion of the plan within the meaning of ERISA," and is a covered entity subject to Section 1557. (Compl. ¶¶ 8, 102). Prior to Caremark becoming the administrator of the Plan, Mrs. Weinreb "was covered for her fentanyl medication under the Plan . . . without interruption." (Compl. ¶ 16). However, In June 2015, Caremark advised Mrs. Weinreb that it would no longer cover her use of fentanyl drugs under the Plan. (Compl. ¶¶ 37, 42). The Second Amended Complaint further alleges that "upon

information and [b]elief, the Plan does not preclude males from receiving a medication under the Plan which is the only effective medication to treat illness exclusive to men." (Compl. ¶ 104).

Plaintiffs' Second Amended Complaint alleges sufficient facts to give Caremark fair notice of their disparate impact sex discrimination claim under Section 1557. *Tovar*, 2018 WL 4516949, at *4; *Jenkins*, 646 F. Supp. 2d at 469-70.   However, even if the Court were to conclude otherwise, the proper recourse would be to grant Plaintiffs leave to amend, not dismissal with prejudice. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## CONCLUSION

For the foregoing reasons, the Court erred in dismissing Plaintiffs' fourth claim for relief for sex discrimination under Section 1557 of the ACA because Section 1557 permits disparate impact sex discrimination claims, and Plaintiffs adequately pled this claim. Plaintiffs therefore respectfully submit that the Court should alter or amend its Judgment dismissing the Section 1557 claim and reopen this case.

Dated: September 27, 2018

/s                                   

Bernard Weinreb
2 Perlman Drive, Suite 301
Spring Valley, New York 10977
(845) 369-1019

Kelli Garcia**
Michelle Banker*
MiQuel Davies**
*National Women's Law Center*
11 Dupont Circle, NW, Suite 800
Washington, DC 20036
Telephone: (202) 588-5180
mbanker@nwlc.org

*Counsel for Plaintiffs*

*Admitted to S.D.N.Y., but pro hac vice motion forthcoming per Judiciary Law § 470
**Pro hac vice motion forthcoming