```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------

REBECCA WEINREB and DAVID H.
WEINREB,

                    Plaintiffs,

    - against -

XEROX BUSINESS SERVICES et al.,

                    Defendants.

--------------------------------------

16-cv-6823 (JGK)

MEMORANDUM OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

    On August 29, 2018, the Honorable Deborah A. Batts dismissed with prejudice the Second Amended Complaint ("SAC").[1] In the SAC, the plaintiffs, Rebecca and David Weinreb, brought discrimination claims under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); the Equal Pay Act, 29 U.S.C. § 206(d)(1); and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116. The plaintiffs now move pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment dismissing the SAC with prejudice with respect only to the plaintiffs' claim for sex discrimination under Section 1557 of the Affordable Care Act against one defendant, Caremark PS Health LLC ("Caremark"). For the reasons

---

[1] This case was subsequently reassigned to this Court.

1

that follow, the plaintiffs' motion is denied, and the Court again dismisses the SAC with prejudice.

I.

As an initial matter, the Court must address an issue relating to this Court's jurisdiction over the current motion.

The memorandum opinion and order dismissing the SAC with prejudice was filed on August 29, 2018. ECF No. 89. The judgment in this case dismissing the SAC with prejudice was entered on August 30, 2018. ECF No. 90. On September 21, 2018, the plaintiffs filed a notice of appeal with respect to the memorandum opinion and order and the judgment. ECF No. 91. On September 27, 2018, the plaintiffs filed this motion pursuant to Rule 59(e). ECF No. 92.

Normally, "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam). However, if a party files a timely motion to alter or amend the judgment under Federal Rule of Civil Procedure 59, see Fed. R. App. P. 4(a)(4)(A)(iv), and files a notice of appeal before the district court disposes of that motion, then the notice of appeal does not become effective until the order disposing of that motion is entered, see Fed. R. App. P.

4(a)(4)(B)(i); see also Banks v. Braun, No. 19-cv-6591, 2019 WL 6050426, at *1 (S.D.N.Y. Nov. 15, 2019). This principle applies even when the motion for reconsideration is filed after the notice of appeal. See Azkour v. Little Rest Twelve, No. 10-cv-4132, 2015 WL 1413620, at *1 (S.D.N.Y. Mar. 23, 2015); Smith v. City of New York, No. 12-cv-8131, 2014 WL 2575778, at *1 n.1 (S.D.N.Y. June 9, 2014) (citing Fed. R. App. P. 4, Advisory Committee Notes to 1993 Amendments, Note to Paragraph (a)(4)). A motion for reconsideration under Rule 59(e) must be made within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e).

The plaintiffs' motion for reconsideration is timely because the plaintiffs filed the motion 28 days after judgment was entered. Because the motion for consideration has not yet been disposed of, the notice of appeal has not become effective according to Appellate Rule 4(a)(4)(B), and this Court therefore has jurisdiction to decide the current motion.

In the event that there is any doubt that the Court has jurisdiction, the Court construes the motion for reconsideration as a motion for an indicative ruling under Federal Rule of Civil Procedure 62.1. Rule 62.1 authorizes the Court to deny a motion that "the court lacks authority to grant because of an appeal that has been docketed and is pending." Fed. R. Civ. P. 62.1(a)(2); see also Darnell v. Pineiro, 849 F.3d 17, 28 n.7 (2d

Cir. 2017). For the reasons stated below, the Court denies the motion for reconsideration.[2]

## II.

### A.

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quotation marks and citation omitted). To succeed on a motion for reconsideration under Rule 59(e), the movant must show "the need to prevent manifest injustice, the need to correct errors of law or fact, the availability of new evidence, or an intervening change in controlling law." Maksymowicz v. Weisman & Calderon, LLP, No. 14-cv-1125, 2014 WL 1760319, at *1 (S.D.N.Y. Feb. 2, 2014). "Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000); see also Quinones v. N.Y. City Legal Police Dep't, No. 14-cv-6253, 2014 WL 6907581, at *1 (S.D.N.Y. Dec. 6, 2014).

---

[2] If the plaintiffs wish to appeal the disposition of the current motion, they must do so in accordance with Federal Rule of Appellate Procedure 4(a)(4)(B)(ii).

4

**B.**

The complete factual background of this case is set forth in Judge Batts's August 29, 2018 memorandum opinion and order, familiarity with which is presumed. The following allegations are particularly relevant to this motion, in which the plaintiffs move for reconsideration only of the dismissal of the Section 1557 claim. The allegations are accepted as true for purposes of this motion.

The plaintiff, David M. Weinreb, is an employee of Conduent HR Consulting, LLC, a former subsidiary of Xerox Corporation. SAC ¶ 3. Mr. Weinreb participated in the Xerox Business Services, LLC Health and Welfare Plan (the "Plan"), which is an employee welfare benefit plan within the meaning of ERISA. Id. ¶¶ 3, 5. The plaintiff, Rebecca Weinreb, the wife of Mr. Weinreb, is a beneficiary of the Plan and suffers from a rare disease known as global diffuse adenomysis ("GDA") that causes Ms. Weinreb excruciating and constant pain. Id. ¶ 10.

On January 1, 2014, Caremark PCS Health LLC assumed administration of the Plan. Id. at ¶ 20. Caremark allegedly rescinded an authorization made by the prior Plan administrator for a tablet form of therapeutic fentanyl to treat Ms. Weinreb's illness known as Fentora and a spray form of fentanyl known as Subsys. Id. ¶¶ 15, 22-24. At first, Caremark refused to reinstate coverage for Fentora but agreed to approve a small

amount of Subsys every 25 days. Id. ¶¶ 26-28. On June 29, 2015, the plaintiffs were informed that Caremark would be denying Ms. Weinreb Subsys and any other fentanyl drug altogether. Id. ¶ 37. The explanation that the plaintiffs received from Caremark was that fentanyl drugs were approved for cancer patients with malignant tumors, but not for Plan beneficiaries, like Ms. Weinreb, who were suffering from non-cancer illnesses. Id. ¶ 42. The use of fentanyl to treat GDA is an off-label use, which means that the United States Food and Drug Administration had not labeled fentanyl as effective to treat GDA. Id. ¶ 66.

The plaintiffs allege that Caremark's interpretation of the Plan to exclude coverage of fentanyl-based treatments for Ms. Weinreb discriminated against females who, unlike males, suffer from GDA. Id. ¶ 103. The plaintiffs allege that this interpretation results in a Plan exclusion that is specific to females and that results in coverage for women that is inferior to the coverage provided for men under the Plan. Id.

### c.

In Judge Batts's August 29, 2018 memorandum and opinion and order, Judge Batts dismissed with prejudice the plaintiffs' Section 1557 claim that Caremark discriminated against the plaintiffs on account of sex when Caremark denied Ms. Weinreb fentanyl-based treatment for her GDA.

In their current motion, the plaintiffs argue, principally, that Judge Batts applied the wrong legal standard because she overlooked the fact that Section 1557 authorizes a private right of action for disparate impact sex discrimination claims, a legal conclusion that was allegedly confirmed by the federal agency charged with interpreting Section 1557, the Department of Health and Human Services.

However, Judge Batts did not overlook any controlling law in her well-reasoned August 29, 2018 opinion, nor do the plaintiffs now point to any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.

Section 1557 provides that "an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 200d et seq.), title IX of the Education Amendment of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . . The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a).

7

It remains true today, as it did when Judge Batts issued her August 29, 2018 opinion, that the weight of authority establishes that Section 1557 incorporates the standards of Title IX for health discrimination claims under Section 1557, the effect being that a Section 1557 plaintiff cannot allege sex discrimination under a disparate impact theory, which is not permissible under Title IX, but must instead allege intentional discrimination, which is the Title IX standard. See Condry v. UnitedHealth Grp., Inc., 2018 WL 3203046, at *4 (N.D. Cal. June 27, 2018) ("[D]isparate impact claims on the basis of sex are not cognizable under section 1557."); Briscoe v. Health Care Serv. Corp., 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) ("Title IX's enforcement mechanism applies to Plaintiff's [Section 1557] sex discrimination claim, so their claim fails because Title IX does not allow disparate-impact claims."). There is no intervening law that has arisen between the time when Judge Batts issued her opinion and today.

The controlling interpretation of Section 1557 derives from the plain and unambiguous language of the statute which expressly incorporates Title IX's standards governing sex discrimination claims in the educational setting into Section 1557. Because the text of Section 1557 is plain and unambiguous, the plaintiffs' citations to the Department of Health and Human Services Office of Civil Rights rule prohibiting "methods of

8

administration that have the effect of subjecting individuals to discrimination on the basis of sex," 45 C.F.R. § 92.101(b)(3)(ii), and to the Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), are misplaced. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843-44; see also Briscoe, 281 F. Supp. 3d at 738 (rejecting the plaintiffs' Chevron argument with respect to Section 1557 because of the plain and ambiguous text of the statute).

The plaintiffs' citation to Rumble v. Fairview Health Services, No. 14-cv-2037, 2015 WL 1197415 (D. Minn. Mar. 16, 2015), is unavailing. As an initial matter, Rumble was decided prior to Judge Batts's ruling, and therefore it does not signal an "intervening change of controlling law," that is newly presented to the Court on this motion. In any event, Rumble is not persuasive. In Rumble, the court found that "the language of Section 1557 is ambiguous, insofar as each of the four statutes utilize different standards for determining liability, causation, and a plaintiff's burden of proof." Id. at *10. The court found that "it appears that Congress intended to create a new, health-specific, anti-discrimination cause of action that is subject to a singular standard, regardless of a plaintiff's

9

protected class status," but the court nevertheless found, at the motion to dismiss stage that "it need not determine the precise standard to apply to Plaintiff's Section 1557 claim." Id. at *11-12 (footnote omitted). Rumble did not establish that Section 1557 discrimination claims may proceed on a disparate impact theory, but only purported to determine that the same standards would apply to health-based discrimination under Section 1557 on the basis of race, sex, age, or disability. Moreover, Rumble appears to be an outlier among reasoned district court opinions interpreting Section 1557 to the extent that Rumble found that Section 1557 created a uniform, health-specific standard to apply to all discrimination cases. See Briscoe, 281 F. Supp. 3d at 737-38 (addressing and rejecting the reasoning of Rumble).

Finally, the plaintiffs' citation to Davis v. Shah, 821 F.3d 231 (2d Cir. 2016), is inapposite. Davis did not involve a claim alleging sex discrimination of any kind. Rather, Davis concerned allegations of disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act. In Davis, the Court of Appeals noted that plaintiffs alleged anti-disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act may proceed under a disparate impact theory, a disparate treatment theory, or a failure to make a reasonable accommodation theory. Id. at 260. However, in

10

this case, the plaintiffs' claim under Section 1557 is not a claim of disability discrimination, but is a claim that Caremark discriminated against Ms. Weinreb on the basis of her sex when Caremark rescinded authorization for fentanyl treatments for Ms. Weinreb's GDA. The Section 1557 sex discrimination claim is governed by Title IX and therefore Davis is irrelevant to the plaintiffs' current motion.

In any event, the plaintiffs did not allege sufficient facts in the SAC to state a claim that Caremark's actions had a disparate impact on the basis of sex.[3] Disparate impact claims typically rely on statistics and "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); see also E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus., 186 F.3d 110, 117 (2d Cir. 1999) ("In order to prevail on a disparate impact claim, a plaintiff must initially establish a prima facie case of discrimination. A plaintiff makes such a showing by first pointing out the specific employment practice it is challenging and then demonstrating

---

[3] Judge Batts did not analyze whether, in any event, the plaintiffs had alleged sufficiently disparate impact on the basis of sex with respect to the plaintiffs' Section 1557 claim. However, in a different part of the opinion, Judge Batts found that the plaintiffs had not alleged sufficiently a disparate impact Title VII claim.

11

that the challenged employment practice caused a significant disparate impact on a protected group. A plaintiff may rely solely on statistical evidence to establish a prima facie case of disparate impact."); ECF No. 102, at 34-35.

The plaintiffs have not alleged that there are disparate impacts felt by females in general as a result of the Plan's guidelines, as interpreted and applied by Caremark. The plaintiffs have introduced no statistical evidence that would support a disparate impact claim. The plaintiffs have alleged only that Ms. Weinreb herself was denied the use of fentanyl by Caremark for her GDA. The plaintiffs have not alleged that fentanyl is prescribed more for men than for women or that women who seek fentanyl for off-label uses, such as the off-label use that Ms. Weinreb sought fentanyl for, are less likely to receive fentanyl than men. See ECF No. 102, at 35. The plaintiffs have not provided sufficient allegations for a disparate impact claim in the SAC, and the plaintiffs do not point to any controlling law that Judge Batts overlooked or to intervening law that has arisen after Judge Batts's opinion.

Additionally, the plaintiffs have identified no error in Judge Batts's determination, applying the proper Section 1557 sex discrimination standard, that the plaintiffs failed to allege facts sufficient to find that Caremark intentionally discriminated against the plaintiffs or that such discrimination

12

was a substantial motivating factor in Caremark's decision to rescind the authorization for Fentora and Subsys for the off-label use of treating Ms. Weinreb's GDA. See ECF No. 102, at 45-46. There were no allegations that Caremark intended to interpret and apply the Plan guidelines in such a way that would discriminate on the basis of sex. Judge Batts correctly dismissed the plaintiffs' Section 1557 sex discrimination claim under an intentional discrimination theory.

For those reasons, the plaintiffs' motion to alter the judgment with respect to the Section 1557 claim is denied, and the Court reaffirms the dismissal of the Section 1557 claim with prejudice.

**III.**

The plaintiffs' motion for leave to file a new complaint is also denied. The "grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016) (citations omitted). However, "as is the case here, once judgment has been entered, 'the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).'" In re Evergreen Mut. Funds Fee Litig., 240 F.R.D. 115, 119-20 (S.D.N.Y. 2007) (quoting Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 244 (2d Cir. 1991)).

13

Because the plaintiffs have failed to demonstrate that the judgment should be altered or set aside under Rule 59(e), it follows that they cannot file an amended complaint. See Caires v. FDIC, No. 16-cv-2651, 2017 WL 2703566, at *2 (S.D.N.Y. June 22, 2017).

In any event, the plaintiffs have failed to demonstrate that an amended complaint would be anything but futile. As Judge Batts noted, the plaintiffs have amended their pleadings several times throughout this litigation and have repeatedly failed to state a claim upon which relief can be granted. The plaintiffs have failed to demonstrate that any amended complaint would not also be subject to dismissal for the reasons set out in Judge Batts's August 29, 2018 memorandum opinion and order.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Court has reconsidered the dismissal of the complaint, and, on reconsideration, the plaintiffs' complaint is again dismissed with prejudice. The motion to file an amended complaint is also denied. The Clerk is directed to close Docket No. 92. The Clerk is also directed to

transmit notice to the Court of Appeals that this motion has been denied.

**SO ORDERED.**

**Dated:    New York, New York**
           **July 27, 2020**                     ____/s/ John G. Koeltl____
                                                     **John G. Koeltl**
                                          **United States District Judge**